(75 N. W. Rep. 264.)

---

GEORGE MONTGOMERY *vs.* GEORGE FRITZ.

Opinion filed April 23rd, 1898.

**Account Stated—Correction—Burden of Proof.**

> An account stated can be opened for correction only upon the ground of fraud, mistake, accident, omission, or undue advantage, and the burden rests upon the party seeking to open the account.

**Evidence Insufficient to Impeach Stated Account.**

> Evidence in this case *held*, on full consideration, insufficient to overcome the the strong *prima facie* case arising from an account stated.

Appeal from District Court, Richland County; *Lauder*, J.

Suit by George Montgomery against George Fritz.   There was a decree for plaintiff, and defendant appeals.

Affirmed.

*Geo. W. Freerks* and *McCumber & Bogart*, for appellant.
*Philetus Smith*, for respondent.

BARTHOLOMEW, J.   This was a foreclosure action.   The indebtness secured was a promissory note of $1,400, given by the defendant and appellant to the plaintiff and respondent.   The execution of the note and security was admitted, and defendant pleaded as a defense that the note was given for an alleged balance due from defendant to plaintiff upon an account stated between them, covering various monetary transactions theretofore had between said parties; that plaintiff had kept the books of accounts covering such transactions, and that he (plaintiff) stated to defendant that said balance was due from defendant to plaintiff by reason of said transactions; and that defendant,

believing and relying upon such statement, was induced to give, and did give, his note for such balance, but that in truth and in fact said representations and statements concerning said account so made by plaintiff were false and fraudulent, and that nothing was due or owing from defendant to plaintiff by reason of said transactions, and said note was wholly without consideration. The trial resulted in findings and decree in favor of plaintiff, and the case comes to this court upon the full record.

A number of errors are assigned upon the admission and rejection of testimony. Of course, in cases of this character, that come to this court strictly for trial *de novo*, under section 5630, Revised Codes, the trial court has no discretion in the matter of admitting evidence. All the evidence offered must be received. But a party may object to any evidence offered, and thereby bring the matter to the attention of the trial court, and he may have his objections entered of record, so that he may again bring the matter to the attention of this court. It would be absurd to suppose that the trial court, in reaching its conclusions, considers any evidence that it thinks improperly in the record. Nor is this court required, as in cases tried before a jury, to make any ruling for the guidance of the trial court upon a retrial of the particular case because final judgment is ordered by this court. Hence in these cases we may well omit all discussion of any question of evidence, where the point raised requires only the application of well known rules of evidence to the particular facts, and we find nothing more in this case. We make this remark in order that counsel may not conclude that the points raised have been overlooked in this class of cases.

Having admitted that the account in this case was settled and stated at the amount of the note, defendant accepts the legal proposition that it can be opened or corrected only on the ground of fraud, mistake, omission, accident, or undue advantage, and that the burden is upon him to establish the fraud upon which he bases his defense. Plaintiff concedes the right to open and correct the account for the reasons and in the manner stated, and,

as the parties are thus agreed upon the law that controls the case, it only remains to consider the evidence on the single question of fraud, as that is the only defense here pleaded. As no itemized account was ever presented, it is not possible for defendant to assign fraud upon any one item or transaction, nor does he seek so to do. He claims the right to investigate all the prior transactions between the parties, and this right is apparently conceded. The first transaction between these parties was upon February 11, 1893, and consisted in the purchase by defendant from plaintiff of a half interest in a stock of merchandise, and the building and lots where the same was kept, in the Villaage of Lidgerwood, in Richland County. The parties do not agree as to the contract price, there being a difference between them of about $200. Defendant paid no money on the purchase, but executed to plaintiff his promissory notes for $3,025. Plaintiff claims that another note for $175 was given a few days later. In April following, defendant purchased the other half of the real estate. The parties are not in accord as to the amount paid therefor, nor as to whether it was paid in property or notes. On May 27th following, defendant bought the other half interest in the stock. There is a difference between the parties, as shown by the testimony, as to the price thereof. There was no money paid, but notes were given. From February 11th to May 27th the parties were partners. On the last mentioned date the partnership was dissolved, defendant to have all outstanding accounts and pay all firm indebtednesss. Plaintiff also claims that he was to receive $200 extra for his services during such partnership. There were also some transfers of accounts back and forth, the exact nature or purpose of which we cannot fully comprehend from the evidence. During the summer the plaintiff opened a store in another town, and defendant shipped him certain goods from the store in Lidgerwood. Defendant says these goods amounted to $1,059. Plaintiff says they amounted to $800. On August 18, 1893, plaintiff purchased back the entire Lidgerwood stock. It was at that time that the account was stated. The price at which

the stock was figured in the settlement was $2,500, with an agreement that the same should subsequently be invoiced, and, if the invoice exceeded that sum, the amount was to be credited on the note then given for the balance due to plaintiff. At the time the stock was repurchased by plaintiff he paid therefor by delivering to defendant certain of defendant's notes that then amounted to over $4,200. Defendant gave a receipt for the notes thus returned. That receipt covered notes for $2,400, with interest, given on February 11, 1893, and notes for $1,597, with accrued interest, given on May 27th. These notes, we infer, drew 12 per cent. interest. Plaintiff, prior to that time, had received from defendant another note for $1,000, which was given to take up a note for $625, given February 11, 1893, and for certain transferred accounts. Defendant claims that when he gave the note of $1,400, in settlement, he supposed that this note for $1,000 was included among the notes delivered to him. Plaintiff testifies that such note was not to be delivered, and was not reckoned in the settlement. That note was secured by mortgage on the store building and ground. The case shows the defendant to be an intelligent business man. He is competent to conduct a store or keep a set of books. We cannot conceive how he could have given a receipt for the notes returned, wherein each note was particularly described, and yet claim that he thought the note for $1,000 was returned. Intelligent men, in a deal involving no larger amount, could hardly make a mistake of $1,000. Certainly, we would require the most positive proof to support such a mistake. But even a proven mistake would not answer, under the pleadings. The defense is fraud, and nowhere in his testimony does defendant claim that plaintiff told him, directly or indirectly, · that the $1,000 note was or would be returned. We have not given the details of the transactions between these parties, but we have given enough to show that there was a large aggregate difference between them. The evidence shows that when the balance was first announced defendant questioned it. He thought it was too large. But he testifies that he was not hurried; that

no threats or inducements were used; that he took all the time that he wanted, and then deliberately signed the note and the receipt.  He had free access to the books, and was, so far as the evidence shows, just as competent to arrive at a correct balance as was plaintiff.  We do not believe fraud was ever predicated upon such a state of facts.  That defendant lost money in the transaction may be true, but that does not prove fraud.  We can see several reasons for his losing money.  We will mention only one.  When he purchased the goods the invoice price was "lumped" at $3,500.  To that was added 10 per cent. for freight. As we read the testimony, while he owned the stock he increased it by purchases as much or more than he decreased it by sales. When he sold he sold for $2,500, with an agreement that an invoice should be taken and he credited on his note for the excess over $2,500.  The stock invoiced $2,613, and defendant testifies that he expected that it would invoice at least $1,000 more, as it must have done had not the original "lump" estimate been excessive.  We find nothing connected with this case, either in the attendant circumstances or the evidence, that shows any such fraud as is required to overcome the strong *prima facie* case that arises on an account stated.  All concur.

Affirmed.